OPINION
{¶ 1} Defendant, Shane Hall, was convicted of Aggravated Vehicular Homicide, R.C. 2903.06(A)(2), Reckless Homicide, R.C.2903.041, Vehicular Assault, R.C. 2903.08(A)(2), and Failure to Stop After An Accident, R.C. 4549.021, after a trial by jury. The trial court merged the convictions for Aggravated Vehicular Homicide and Reckless Homicide. Hall was sentenced to serve concurrent, one-year prison sentences. He filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 2} "A non-expert witness may not testify as to the ultimate issue of fact."
 {¶ 3} Hall's convictions resulted from events of December 31, 2001, that took place on Interstate Route 70. The State's evidence demonstrated that Hall's vehicle entered the eastbound lanes of I-70 from I-75, forcing a vehicle traveling in the extreme left lane off the roadway and into the grassy median. Its driver, Kenneth Grier, was unable to regain control of his car, which entered the westbound lanes of I-70 and collided first with a tractor-trailer and then with a large SUV traveling westbound on that roadway. Grier was seriously injured. His passenger, Wendy Parrish, was killed.
 {¶ 4} Two Ohio State Highway Patrol officers who investigated the accident were called by the State as witnesses. Neither was qualified by experience so as to permit him to offer an expert opinion. In that event, the witness's opinions are limited to matters of which he has personal knowledge, on which he may state an opinion or inference which is rationally based. Evid.R. 602, 701.
 {¶ 5} The first witness, Trooper Salemme, was asked by the prosecutor whether his investigation had revealed the cause of the accident. Defendant objected, without stating a basis for his objection. The court overruled the objection. Trooper Salemme then testified that he had determined from his investigation that the accident was caused by Defendant's improper merger onto I-70 from I-75, when his vehicle failed to proceed on the access ramp lane on the right side of I-70 and instead drove directly to the far left lane in front of Grier's vehicle, forcing it from the road and onto the median.
 {¶ 6} Defendant's assignment of error contends that Trooper Salemme's testimony was inadmissible, and that the trial court erred when it overruled Defendant's objection to the question that elicited Trooper Salemme's response, because the response he gave embraced the ultimate fact the jury was required to determine. However, Evid.R. 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."
 {¶ 7} On appeal, Defendant-Appellant argues that Trooper Salemme's opinion was not otherwise admissible because, not having been qualified as an expert witness, his after-the-fact investigation could not provide the personal knowledge on which a lay opinion must be based.
 {¶ 8} Evid.R. 602 requires a witness to have personal knowledge of the matter about which he testifies, and Evid.R. 701 requires that any opinion a lay witness states must be rationally based upon first-hand perceptions by the witness. Otherwise, the opinion is speculation, and as such cannot be "helpful to a . . . determination of a fact in issue." Evid.R. 701.
 {¶ 9} Trooper Salemme had first-hand knowledge of the facts he observed in his investigation. However, the cause of the accident was a matter retrospective to those facts. Lacking personal knowledge of the cause of the accident, Trooper Salemme was not competent to state an opinion concerning its cause.
 {¶ 10} These particulars were not elucidated for the trial court by Defendant-Appellant's general objection. Evid.R. 103(A)(1) states: "Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of the objection, if the specific ground was not apparent from the context." Defendant-Appellant's general, unexplained objection to the question the prosecutor posed to Trooper Salemme satisfied none of those requirements.
 {¶ 11} The prosecutor posed much the same question concerning the cause of the accident to the other Ohio State Highway Patrol officer who had investigated it, Sgt. Widmyer. Like Trooper Salemme, Sgt. Widmyer lacked first-hand knowledge of the accident. Neither was he qualified as an expert competent to offer an opinion.[1] Defendant again objected, but this time explained that Sgt. Widmyer could not offer an opinion on the ultimate fact in issue. The court overruled the objection, noting that Defendant-Appellant also had an accident reconstruction expert whose testimony he intended to offer, and that inasmuch as Sgt. Widmyer is an accident reconstructionist the court would likewise allow him to state an opinion because "that's what reconstruction experts do." Defense counsel responded, "fair enough." (T. 498).
 {¶ 12} Sgt. Widmyer testified that through his investigation and the statements of numerous witnesses to the crash he had determined that Defendant improperly merged onto I-70 east from I-75 north by moving directly from the right access lane to the far left lane of travel, forcing Grier's vehicle off the road and into the median, where it went out of Grier's control and eventually slid across the median and into oncoming westbound traffic.
 {¶ 13} The qualifications of an expert witness whom Defendant-Appellant intended to call could not render Sgt. Widmyer competent to offer an expert opinion. Absent that qualification, the prosecutor's question was improper because it tended to elicit lay opinion evidence which was inadmissible.
 {¶ 14} Evid.R. 704 permits testimony on the ultimate issue, which was the basis of the objection Defendant-Appellant posed, so long as the evidence is "otherwise admissible." Sgt. Widmyer's testimony concerning his opinion was inadmissible. Therefore, and unlike Defendant-Appellant's general objection to the question posed to Trooper Salemme, his objection to the question posed to Sgt. Widmyer presented the court with grounds sufficient to rule on its admissibility.
 {¶ 15} Having said that, we nevertheless find that any error in permitting Sgt. Widmyer to testify as he did was harmless beyond a reasonable doubt.
 {¶ 16} Sgt. Widmyer's testimony was cumulative to Trooper Salemme's. Both testified that Defendant-Appellant forced Grier's vehicle off the road when Defendant-Appellant pulled directly into the lane in which Grier was traveling. Neither opined that Defendant-Appellant had acted recklessly, which was an ultimate finding the jury was required to make with respect to the three moving violation changes.
 {¶ 17} Grier's testimony was consistent with the two officers'. Indeed, so was Defendant-Appellant's own testimony. He added only that he had looked over his left shoulder before he entered the lane in which Grier was traveling, but didn't see Grier before he pulled into that lane, and first saw Grier only when his car was in the grassy median.
 {¶ 18} Proximate cause was one of the ultimate issues the jury was required to determine with respect to each of the three principal offenses charged; Aggravated Vehicular Homicide, Reckless Homicide, and Vehicular Assault. Yet, with respect to the facts of Defendant-Appellant's actual conduct, little was in dispute, and what was disputed was outside the scope of the officers' testimony. We cannot find, on the record as a whole, that Sgt. Widmyer's inadmissible opinion on that matter had any prejudicial effect sufficient to justify reversal.
 {¶ 19} The first assignment is error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 20} "A defendant cannot be held responsible for a homicide where his actions are not the proximate cause of death."
 {¶ 21} Each of the three principal charges against Defendant-Appellant required a finding that Ms. Parrish's death proximately resulted from his reckless acts or omissions. Defendant-Appellant argues that the jury's finding of proximate cause is unsupported by the record. He points out that his vehicle did not come into contact with Grier's, that Grier was driving in excess of the speed limit, and that Grier's unavailing attempts to gain control of his vehicle after it entered the median was the cause of its subsequent collision with oncoming traffic.
 {¶ 22} The matter of proximate cause was for the jury to decide, and so long as there was sufficient evidence from which a finding against Defendant-Appellant could be made, beyond a reasonable doubt, it will not be disturbed on appeal. We believe that such evidence is adequately portrayed by the record with respect to Defendant-Appellant's own conduct to permit a finding of recklessness. Defendant argues that, notwithstanding that finding, he is relieved of liability by Grier's own negligence.
 {¶ 23} In order to relieve a party of liability for his own reckless acts or omissions, a break in the chain of causation must take place. A break occurs when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. Hurt v. Charles J. Rogers Transp.Co. (1955), 164 Ohio St. 323. However, the intervening cause must be disconnected from the negligence of the first actor, and must be of itself an efficient, independent, and self-producing cause of the injury. Berdyck v. Shinde (1993),66 Ohio St.3d 573. Neither does an intervening negligence relieve the first actor of liability if the two negligences cooperated in proximately causing the injury, and the first substantially contributed to it. Garbe v. Halloran (1948), 150 Ohio St. 476.
 {¶ 24} Apart from Defendant-Appellant's contention that "Grier's improper attempts to get around the Appellant caused the injuries to himself and the death of Ms. Parrish" (Brief, p. 5), which the jury plainly rejected, nothing in Grier's driving is sufficient to absolve Defendant-Appellant of the liability which his conduct imposed on him. If there was any negligence on Grier's part in failing to regain control of his vehicle, it was so clearly a result of Defendant-Appellant's own conduct as to avoid any finding of an intervening negligence chargeable to Grier that might absolve Defendant-Appellant of liability.
 {¶ 25} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 26} "The appellant was denied a fair trial due to the attempted admission of prohibited prior bad acts evidence."
 {¶ 27} Defendant argues that the trial court abused its discretion in denying his motion for a mistrial when the State improperly attempted to introduce evidence of his other crimes or bad acts to prove his bad character, in order to show that Defendant acted in conformity with that bad character in this case, in violation of Evid.R. 404(B).
 {¶ 28} The prosecutor asked Defendant on cross-examination whether he was an aggressive driver. Defendant responded "no." The prosecutor then asked Defendant, "Have you had problems in the past?" Defendant objected and moved for a mistrial, arguing that the question was calculated to elicit evidence of his prior bad acts. The trial court overruled the motion for mistrial, but it sustained Defendant's objection to the question and instructed the jury to disregard the prosecutor's question. The jury never heard a response to the prosecutor's question, and the question itself was too non-specific in nature to create any material implication about Defendant's driving record. We find no prejudice.
 {¶ 29} During Defendant's cross-examination of Sergeant Widmyer, Defendant asked what address Sergeant Widmyer gave to another officer, Trooper Oligee, as Defendant's address, when Oligee was asked to go to Defendant's residence and take photographs of Defendant's truck. Sergeant Widmyer then examined his file and took out a computer printout of Defendant's driving record, which contained various addresses listed for Defendant. Defendant raised no objection at that time.
 {¶ 30} At the close of all the evidence Defendant moved for a mistrial, arguing that Sergeant Widmyer's conduct in pulling out and unfolding a printout of Defendant's driving record unfairly implied to the jury that Defendant had a bad driving record. The record does not demonstrate that the jury was made aware that the printout was a copy of Defendant's driving record. The trial court overruled Defendant's request for a mistrial on a finding that Sergeant Widmyer did not produce that printout in order to imply to the jury that Defendant has a history of traffic convictions. Rather, Widmyer consulted that printout to obtain the various addresses listed for Defendant by the Bureau of Motor Vehicles. That does not portray any form of "bad act" that Evid.R. 404(B) prohibits.
 {¶ 31} No evidence was introduced to the jury in this case regarding prior crimes, wrongs, or bad acts by Defendant. We see no abuse of discretion on the part of the trial court in denying Defendant's request for a mistrial.
 {¶ 32} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 33} "The evidence against the appellant is insufficient as a matter of law and his conviction is against the manifest weight of the evidence."
 {¶ 34} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 35} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 36} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive.State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 37} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 38} In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, this court stated:
 {¶ 39} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 40} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 41} Defendant was found guilty of recklessly causing the death of Wendy Parrish while operating a motor vehicle, R.C.2903.06(A)(2), and recklessly causing serious physical harm to Kenneth Grier while operating a motor vehicle, R.C.2903.08(A)(2). Defendant argues that there is insufficient evidence of causation and recklessness.
 {¶ 42} The evidence presented by the State, if believed, demonstrates that Defendant improperly merged onto I-70 east, driving directly from the right-side access lane of I-70 to the extreme left lane, cutting in front of Mr. Grier, who was driving in the left lane, forcing Grier's vehicle off the road and into the wet, rutted median. Once in the median, Grier lost control of his vehicle and, despite Grier's efforts, he was unable to regain control. His vehicle then slid across the median and into the oncoming westbound traffic, where it collided with westbound traffic, resulting in serious injuries to Mr. Grier and the death of his passenger, Wendy Parrish.
 {¶ 43} Defendant's actions set in motion a chain of events that proximately resulted in this accident and the death of Ms. Parrish and serious injuries to Mr. Grier. This accident was a natural, foreseeable consequence that flow, from Defendant's acts in the ordinary course of events. Moreover, Defendant's acts demonstrate recklessness; that is, that with heedless indifference to the consequences, he perversely disregarded a known risk that his conduct was likely to cause a certain result. R.C. 2901.22(C).
 {¶ 44} As we indicated when overruling Defendant's second assignment of error, the evidence is legally sufficient to prove the elements of causation and recklessness. The jury did not lose its way simply because it chose to believe the State's evidence and rejected Defendant's contention that Mr. Grier caused this accident when he failed to regain control of his vehicle after it was forced into the median. Neither did the jury lose its way in rejecting Defendant's claims that his actions in merging were not reckless because he had looked but did not see Grier's vehicle before moving into the left lane. The State's witnesses testified to the contrary: that Grier appropriately attempted to regain control over his vehicle but was simply unable to, and that Defendant did not look or turn his head before moving directly over into the left lane from the right merging lane. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 45} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Wolff, J., concur.
[1] Sgt. Widmyer testified that he had been involved in several hundred accident investigations. However, that experience generally does not qualify a witness as an accident reconstruction expert. See State v. Yates, 71 Ohio St.3d 219,1944-Ohio-462.