[Cite as *State v. Allen*, 2016-Ohio-102.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102385**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERNEST L. ALLEN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589485-A

**BEFORE:** Jones, A.J., Boyle, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 14, 2016

**ATTORNEY FOR APPELLANT**

Anna Markovich
Law Office of Anna Markovich
18975 Villaview Road, #3
Cleveland, Ohio 44119

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Jonathan Block
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

{¶1} Defendant-appellant, Ernest Allen, appeals his multiple convictions, which were rendered after a bench trial. We affirm.

{¶2} In 2014, Allen was charged with attempted murder, retaliation, menacing by stalking, having weapons while under disability, and two counts each of felonious assault and attempted felonious assault. The charges carried with them one- and three-year firearm and repeat violent offender specifications.

{¶3} The following pertinent evidence was presented at trial.

{¶4} Allen and victim Jesse Perry knew each other and had a friendly relationship until 2010 or 2011. It was at that time that Allen was arrested for robbery; Perry testified that he was the victim of the crime. Allen pleaded guilty and was sent to prison. According to Perry, Allen blamed him for his conviction.

{¶5} In February 2014, Perry ran into Allen at a convenience store. Allen called Perry a snitch, pulled out a gun, and showed it to Allen. Allen went outside and Perry went and hid in the store's cooler. Allen left when Perry's friends showed up.

{¶6} In June 2014, Perry and Charnay James were sitting in James's car outside of Shaker Park Gardens in Warrensville Heights. James and Perry saw Allen in the car's rearview mirror. Allen was holding a gun. Perry turned around in his seat to look at Allen just as Allen started shooting at the car; two bullets hit the car. Perry got out of the car and ran towards the apartment building. Allen fired his gun three more times at Perry before fleeing the scene.

**{¶7}** Responding officers testified that they took statements from Perry and James and processed the scene, recovering a bullet fragment from the trunk of James's car and a shell casing.

**{¶8}** The trial court acquitted Allen of menacing by stalking and of all the repeat violent offender specifications but convicted him of all other charges and specifications. The court sentenced Allen to a total of ten years in prison.

**{¶9}** Allen filed his notice of appeal and raises eight assignments of error for our review:

> I: Trial court erred in denying Appellant's motion for acquittal under Crim. Rule 29.

> II: Appellant's conviction for attempted murder is not supported by sufficient evidence.

> III: Appellant's conviction for attempted murder, felonious assault, attempted felonious assault, having weapons under disability, and retaliation are against the manifest weight of the evidence in violation of Article IV, Section 3 of the Ohio Constitution.

> IV: Trial court erred by not merging two counts of felonious assault and two counts of attempted felonious assault for sentencing purposes.

> V: Trial court committed a reversible error when it permitted Sergeant Vida to render an opinion as to the nature of the holes found in the rear panel and the trunk of James' car.

> VI: Appellant was deprived due process by the trial court.

> VII: Appellant was denied his constitutional right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section X of the Ohio Constitution

> VIII: The totality of the aforementioned errors by the trial court,

prosecuting counsel, and by defense counsel and their cumulative prejudicial effect deprived Appellant of his constitutional right to due process of law and a fair trial.

{¶10} Further facts will be discussed under the appropriate assignments of error.

**Allen's convictions were supported by the evidence**

{¶11} In the first three assignments of error, Allen argues that his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence. Although the concepts of manifest weight and sufficiency of the evidence involve different standards of review, we proceed to discuss them together because the evidence is the same for both. As an initial matter, Allen lists his retaliation conviction under the third assignment of error, but makes no specific argument as to that conviction. Thus, we will not consider this conviction and it is affirmed. *See* App.R. 12(A) and 16(A).

{¶12} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense; Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d

560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶13} Unlike a claim involving sufficiency of the evidence, when reviewing a challenge to the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence is reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* It is not the function of an appellate court to substitute its judgment for that of the trier of fact. *Jenks* at 279; *State v. Schultz*, 8th Dist. Cuyahoga Nos. 102306 and 102307, 2015-Ohio-3909, ¶ 35.

{¶14} Allen was convicted of attempted murder, in violation of R.C. 2903.02 and 2923.02(A). To convict Allen of attempted murder, the state had to prove beyond a reasonable doubt that Allen purposely attempted to cause Perry's death. R.C. 2901.22(A) provides that a person acts purposely when it is his or her

> specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

The requisite intent to kill can be shown "where the natural and probable consequences of a defendant's action is to produce death [and could be] inferred from all the surrounding

circumstances." *State v. Caldwell*, 79 Ohio App.3d 667, 668, 607 N.E.2d 1096 (4th Dist.1992). And intent need not be proven by direct testimony. *State v. Burke*, 73 Ohio St.3d 399, 404, 653 N.E.2d 242 (1995); *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Instead, an intent to kill may be deduced from the surrounding circumstances, including the nature of the instrument used, its tendency to end life if designed for that purpose, and the manner in which any wounds were inflicted. *State v. Eley*, 77 Ohio St.3d 174, 180, 672 N.E.2d 640 (1996); *Burke* at 404. That a victim is not harmed is not a defense to attempted murder. *State v. Jenkins*, 15 Ohio St.3d 164, 220, 473 N.E.2d 264 (1984).

**{¶15}** Allen argues that the state failed to produce sufficient evidence that he purposely tried to kill or had the intent to kill Perry. Allen claims that he had never previously threatened to kill Perry, the shots fired could not have hit Perry because the holes in James's car were found on the opposite side of the car from where Perry was sitting, and Perry testified that once he left James's car, the shots were fired "around" him, not "directly at [him]." Allen further argues that a "mere possibility that Perry could have been hurt by a ricocheted bullet is not sufficient to prove the requisite intent to kill." We disagree.

**{¶16}** Perry testified that he and Allen knew each other and Allen blamed Perry for sending him to prison. According to Perry, Allen threatened him with a gun the last time they encountered each other in a convenience store. On the night of the shooting, Perry saw Allen standing approximately ten feet away from the car in which Perry was a

passenger.   Perry saw Allen with a gun and Allen used that gun to shoot at the car. After Perry got out of the car, Allen continued to fire his gun.   Perry testified: "The [shots] came toward me.   I don't know where they went after that, but they came toward me in the air. * * * They came past my person, they came past my body. * * * It was like boom, boom, boom, because he was trying to hit me."   That none of the bullets hit Perry does not negate that Allen purposefully shot at him, with the intent to kill him.

{¶17} Allen also points to inconsistencies in witness testimony and argues that these inconsistencies amount to an incorrect verdict on all of the charges against him. Again, we disagree.   Much of Allen's argument is based on the interpretation of the evidence presented at trial and how that evidence was incorrectly used to convict him. For example, Allen claims that Perry could not have possible seen him out of the rearview mirror because Perry was a passenger in the car; therefore, Perry must have lied about Allen being the shooter.   But there was no testimony presented at trial about this issue and it is not within our province to interpret the evidence in this manner.   And, moreover, any divergence in testimony created a credibility issue for the trier of fact to resolve.   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶18} We are reminded that the manifest weight standard is a high one because the trier of fact was in a better position to determine credibility issues, by having personally viewed the demeanor, voice inflections, and gestures of the witnesses.   *Cleveland v. Joiner*, 8th Dist. Cuyahoga Nos. 97434 and 97435, 2012-Ohio-3250, ¶   17, citing *State*

*v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019, ¶ 36 (7th Dist.); *DeHass* at 231. A reviewing court therefore should not interfere with the witness credibility and factual determinations of the trier of fact, unless the record demonstrates that a reasonable trier of fact simply could not have found the witness to be credible. *Joiner* at *id.*, citing *State v. Mock*, 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, ¶ 40 (7th Dist.). Simply put, just because the credibility of the witnesses and the evidence was resolved in the state's favor does not make Allen's convictions against the weight of the evidence.

{¶19} There was sufficient evidence to support Allen's convictions and the convictions were not against the manifest weight of the evidence. Therefore, the first, second, and third assignments of error are overruled.

**Trial court correctly merged certain convictions**

{¶20} In the fourth assignment of error, Allen claims that the trial court should have merged the two felonious assault and two attempted felonious assault convictions even though they involved multiple victims. This argument has no merit.

{¶21} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶22} "Because the prosecution selects the charges that may be brought based

upon the criminal conduct of an accused, and that conduct may potentially support convictions of multiple offenses, the judge must determine whether the conduct can be construed to constitute a single or more than one offense." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13. "Thus, R.C. 2941.25(A) allows only a single conviction for conduct that constitutes 'allied offenses of similar import.'" *Id.*

**{¶23}** In this case, the trial court merged the felonious assault and attempted felonious assault as to Jesse Perry into the conviction for attempted murder. The state proceeded to sentencing on the attempted murder conviction. The trial court further merged the felonious assault and the attempted felonious assault as to Charnay James and the state proceeded to sentencing on the felonious assault conviction. Allen argues that the felonious assault and attempted felonious assault convictions as to each victim should merge into just one conviction. But, as stated, Allen was sentenced for only the attempted murder of Perry and the felonious assault of James. So while Allen may have been found guilty on each of the above-mentioned charges, he was only sentenced on one count as to Perry and one count as to James.

**{¶24}** Thus, Allen's argument is essentially that the attempted murder of Perry and the felonious assault of James should merge into a single conviction. But, as the Ohio Supreme Court reiterated in *Ruff*, "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *Id.* at ¶ 10. "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's

conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.*

**{¶25}** In this case, because the attempted murder of Perry and the felonious assault of James involved separate victims, the offenses were of dissimilar import and Allen was properly convicted and sentenced on each count.

**{¶26}** The fourth assignment of error is overruled.

**Trial testimony was properly admitted**

**{¶27}** In the fifth assignment of error, Allen argues that Warrensville Heights Police Sergeant Steve Vida's testimony as to the nature of the bullet holes found in James's car was improperly admitted. Because Allen failed to object to Sergeant Vida's testimony during trial, he has waived all but plain error on this issue.

**{¶28}** It is a well-established rule that

> "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."

*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15. Crim.R. 52(B) allows appellate courts to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the defendant's failure to meet his or her obligation to bring those errors to the attention of the trial court. But it is the accused who bears the burden of proof to demonstrate plain error on the record and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings." *Rogers*

at ¶ 22 citing *Quarterman* at ¶ 16 and *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. However, even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Rogers* at *id.*, citing *Barnes* at *id*.

{¶29} The *Rogers* court reminds us that "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "'admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.* at ¶ 23, citing *Barnes* at 27 (quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus).

{¶30} Allen claims that the trial court erred when it allowed Sergeant Vida to opine that the bullet hole on the side rear panel of James's car appeared to be an entrance hole and the bullet came from outside the car because the sergeant was not qualified as a ballistics expert.

{¶31} The decision whether to admit or exclude evidence is left to the sound discretion of the trial court and will not be reversed unless there was an abuse of that discretion. *Columbus v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382 (1989). Evid.R. 701 provides that a lay witness may testify to those "opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or determination of a fact in issue." A police

officer may testify concerning matters that are within his or her experience and observations that may aid the trier of fact in understanding the other testimony. *State v. Rogers*, 8th Dist. Cuyahoga Nos. 72736 and 72737, 1998 Ohio App. Lexis 2300, *9 (May 21, 1998).

{¶32} Ohio has long recognized that a nonexpert witness can properly express opinions that merely summarize complex factual observations, when the testimony is a composite of fact and opinion. *State v. Morris*, 8 Ohio App.3d 12, 16, 455 N.E.2d 1352 (8th Dist.1982). Evid.R. 701 requires that any opinion offered by a lay witness be rationally based on first-hand perceptions by the witness. *State v. Hall*, 2d Dist. Montgomery No. 19671, 2004-Ohio-663, ¶ 8. If a lay witness's opinion is not "rationally based on the perception of the witness," then "the opinion is speculation, and as such, cannot be 'helpful to a * * * determination of a fact in issue.'" *State v. Cornish*, 12th Dist. Butler No. CA2014-02-054, 2014-Ohio-4279, ¶ 24, quoting *State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 23.

{¶33} An officer's belief as to a fact based on personal observations of facts to support that belief is permissible first-hand testimony. *State v. Tatum*, 10th Dist. Franklin No. 10AP-626, 2011-Ohio-907, ¶ 17.[1] For example, in *State v. Whittsette*, 8th

---

[1] The court issued a nunc pro tunc opinion in *Tatum*, substituting a new opinion that changed the name of the victim to initials. *See State v. Tatum*, 10th Dist. Franklin No. 10AP-626, 2012 Ohio App. LEXIS 895 (Mar. 13, 2012). The Ohio Supreme Court website, however, directs us to use the original website for the substituted opinion, 2011-Ohio-907. http://www.supremecourt.ohio.gov/rod/docs/pdf/10/2011/2011-Ohio-907.pdf (last visited December 16, 2015).

Dist. Cuyahoga No. 70091, 1997 Ohio App. LEXIS 500 (Feb. 13, 1997), this court held that a police detective's testimony that he doubted a wound was caused by a particular caliber gun was properly admitted, pursuant to Evid.R. 701, based on his familiarity with guns and past observances of gunshot wounds made by various caliber guns. In *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, the court held that an officer's testimony opining that injuries to a domestic violence victim were defensive wounds was admissible lay-witness testimony given the fact that it was based on the officer's personal observation of the victim, training as a police officer regarding defensive wounds, and his common understanding of how bruises, abrasions, and rashes appear. *Id.* at ¶ 76-77. In *State v. Parker*, 2d Dist. Montgomery No. 18926, 2002-Ohio-3920, the court held that pursuant to Evid.R. 701, a detective was permitted to testify that two wounds on the defendant were consistent with gunshot wounds based upon the detective's 22 years of experience on the police force, experience with victims of gunshot wounds, and familiarity with different types of gunshot wounds. *Id.* at ¶ 53.

{¶34} In this case, Sergeant Vida testified that he had been employed by the Warrensville Heights Police Department for 18 years. He observed two bullet holes in James's car, found a shell casing in the trunk, and photographed the car.

{¶35} Sergeant Vida's testimony was based on his first-hand knowledge in investigating the crime scene and was rationally based on his perceptions; he did not need the specialized knowledge of a ballistics expert to describe his observations and investigation into the shooting. Even assuming, without deciding, that the trial court

improperly allowed Sergeant Vida to testify regarding his opinion about the bullet holes in James's car, there is nothing to suggest that his testimony affected the outcome of the trial. Moreover, because this was a bench trial, the trial court was presumed to have only considered reliable, relevant, and competent evidence in rendering its verdict. *State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 27.

{¶36} Finally, we note that Allen did not challenge the testimony of Detective Fossett. Detective Fossett testified that there were two visible holes, which he determined to be bullet holes in the left rear panel of James's car. Based on his experience and training, the detective testified that the shooter was fairly close to the vehicle and the holes left in the car were rather large. He opined that one of the bullet holes was a "straight-on shot" based on the shape of the bullet hole, which allowed him to determine if the bullet was shot from a left angle, right angle, or straight-on angle depending on the diameter of the hole. He further testified that the bullet hole inside the trunk was caused by a bullet fragment. Thus, even if Sergeant Vida's testimony was in error, Allen failed to challenge same or similar testimony given by Detective Fossett.

{¶37} We find that there was no error, plain or otherwise, in the trial court allowing Sergeant Vida's testimony into evidence. The fifth assignment of error is overruled.

**No evidence of trial court bias**

{¶38} In the sixth assignment of error, Allen claims that the trial court was biased in favor of the state. Because Allen did not raise this issue in the trial court, he has

waived all but plain error.

{¶39} Allen argues that on numerous occasions during the trial,

> in order to overcome defense objections, the court instructed the prosecuting attorney to establish a proper foundation for his questions and assisted the prosecuting attorney with rephrasing his questions, so the witnesses testimony

would be admissible. Allen argues that the trial court's actions prejudiced him and denied him a fair trial.

{¶40} To support his position, Allen cites to the concurring/dissenting opinion in *State v. Maxie*, 3d Dist. Marion No. 9-13-73, 2015-Ohio-816, ¶ 100 (Rogers, P.J., concurring and dissenting), where the panel member opined,

> It is wholly inappropriate for a trial court to continually remind the State what evidence it has presented, or has not presented, throughout the trial proceedings. Certainly, it should not suggest to the State the different ways it could introduce the missing evidence.

{¶41} In *Maxie*, the appellant had claimed that he was denied a fair trial because the trial court assisted the state in the presentation of its case, pointing to several statements and comments the trial court made that assisted the appellee in obtaining a conviction. The court noted that the appellant had failed to allege a plain error occurred or that his substantial rights had been affected. The court found that while the trial court had interjected itself in the proceedings, the majority of the complained-of behavior simply and properly served to preserve the record, the court also assisted defense counsel, and the instances in which the trial court seemed to have been "helping" the parties did not amount to prejudice. And the appellant had not suggested a possibility that the state

would have failed to establish any elements of the crime and any such suggestion would be speculative. Even the concurring/dissenting panel member agreed that the appellant's argument had no merit because he had failed to object to the improper interjections at trial, and failed to prove that but for the trial court's comments, the outcome of his trial would be different. *Id.* at ¶ 101.

{¶42} In this case, Allen complains that the trial court constantly reminded the state that it needed to build a foundation for its questions about how a witness identified the assailant, whether the victim feared for her safety, whether the testifying officer could opine about the trajectory of the bullet, and whether the testifying officer knew if the bullet had hit its target or could be capable of killing someone. But a review of the record shows that the trial court was questioning the prosecutor and *requiring* him to lay a foundation for questions the prosecutor was asking at least in part so the court could determine the admissibility of the testimony. And, moreover, the court also "assisted" defense counsel in the same or similar manner. Moreover, there is no evidence that the outcome of the trial would have been different but for the trial court's interjections.

{¶43} Therefore, the sixth assignment of error is overruled.

**Defense counsel was not constitutionally ineffective**

{¶44} In the seventh assignment of error, Allen argues that he was denied the effective assistance of counsel.

{¶45} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. *McMann v. D.R.*, 397 U.S. 759,

771, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970). Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

{¶46} An attorney properly licensed in the state of Ohio is presumed competent. *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990). The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In demonstrating prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶47} Allen claims that his attorney was ineffective for failing to: 1) effectively cross-examine the state's witnesses; 2) object to Sergeant Vida's testimony about the bullet holes; 3) request ballistic and crime-scene reconstruction examinations; 4) object to the prosecution's misstatement of the evidence during closing arguments; and 5)

effectively argue allied offenses.

**{¶48}** First, we note that as to Sergeant Vida's testimony and allied offenses, we have already found that there was no error; therefore, counsel was not ineffective in these instances.

**{¶49}** In reviewing defense counsel's cross-examination of the state's witnesses, we are reminded that the extent and scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *See State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 33 (because the scope of cross-examination falls within the realm of trial strategy, debatable trial tactics do not establish ineffective assistance of counsel), citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810. In reviewing defense counsel's questioning of the state's witnesses, we find the record demonstrates that defense counsel extensively cross-examined all of the state's witnesses.

**{¶50}** Allen also claims his counsel was ineffective for failing to request ballistic and crime-scene reconstruction examinations. But Allen has not shown how doing so would have assisted his case, let alone changed the outcome of the trial. Finally, Allen argues that his attorney should have objected to the prosecution's alleged misstatement of the evidence during his closing argument. But, again, because this is a bench trial, the court is presumed to take into account only reliable, relevant, and competent evidence. Opening and closing statements are not evidence. *Allen v. Jackson*, 8th Dist. Cuyahoga No. 101193, 2014-Ohio-5793, ¶ 32; *State v. Spaqi*, 8th Dist. Cuyahoga No. 69851, 1997

Ohio App. LEXIS 713 (Feb. 27, 1997).

{¶51} After reviewing the record, we find that Allen has not demonstrated a reasonable probability that the outcome of the proceedings would have been different but for defense counsel's alleged deficient performance.    The seventh assignment of error is overruled.

**Cumulative error doctrine does not apply**

{¶52} In the eighth assignment of error, Allen argues that the cumulative errors that occurred at trial deprived him of his right to a fair trial.

{¶53} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal.    *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).    However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent.    *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.    Because this court has found Allen's arguments with regard to his other assignments of error meritless, the cumulative error doctrine does not apply.

{¶54} Therefore, the eighth assignment of error is overruled.

{¶55} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
PATRICIA ANN BLACKMON, J., CONCUR